UNION PACIFIC RAILROAD
COMPANY

v.

State of LOUISIANA ex. rel. Richard P.
IEYOUB, Attorney General, and Louisi-
ana Department of Public Safety and
Corrections, Office of State Police.

No. CIV.A. 97–872–B–M1.

United States District Court,
M.D. Louisiana.

Jan. 5, 1999.

Sam A. Leblanc, III, Adams & Reese, New
Orleans, LA, Warren E. Byrd, II, Robert
Layne Coco, Adams & Reese, Baton Rouge,
LA, for Union Pacific Railroad Company.

Paul Edward Schexnayder, Louisiana De-
partment of Public Safety, Baton Rouge, LA,
for Louisiana Dept. of Public Safety and
Corrections, Office of State Police.

## RULING

POLOZOLA, Chief Judge.

This case requires the Court to determine
whether federal law preempts a state law
which governs the conduct of railroads trans-
porting hazardous materials. Specifically,
the Court must determine whether Louisiana
Revised Statutes 32:1510 [1] is preempted by

---

1. La.Rev.Stat. Ann. § 32:1510 (1989):

§ 1510. Reporting of incidents, accidents,
and cleanups

A. Each person involved in an incident, ac-
cident, or the cleanup of an incident or acci-
dent during the transportation, loading, un-
loading, or related storage in any place of a
hazardous material subject to this Chapter
shall report immediately by telephone to the
department if that incident, accident, or clean-
up of an incident or accident involves:
(1) A fatality due to fire, explosion, or expo-
sure to any hazardous material.
(2) The hospitalization of any person due to
fire, explosion, or exposure to any hazardous
material.
(3) A continuing danger to life, health, or
property at the place of the incident or acci-
dent.

the Federal Railroad Safety Act (FRSA)[2] and/or the Hazardous Materials Transportation Act (HMTA)[3].

This matter is before the Court on cross motions for summary judgment filed by the parties. For reasons which follow, the Court finds that Louisiana Revised Statutes 32:1510 is preempted by the FRSA[4] insofar as it applies to railroads.[5]

## I. FACTS AND PROCEDURAL HISTORY

This matter arose out of two incidents which occurred while plaintiff's trains were transporting hazardous materials. The first incident, which occurred on August 30, 1995, involved the derailment of three tank cars carrying corrosive liquid. While none of the cars overturned, one of the cars did incur damage to its outer jacket; the parties dispute whether there was any damage to the inner jacket of this car. Furthermore, the parties disagree over whether there was a "threat of release" from any of the tank cars. There was no leakage of any material and no one was killed, injured, or required medical treatment as a result of this incident. Plaintiff estimated the damage to the tank car was less than $50,000. The Louisiana State Police cited plaintiff for a violation of Louisiana Revised Statutes 32:1510 for its failure to make proper notification of the incident to the Louisiana State Police and proposed a penalty of $2,500.

The second incident, which occurred on February 18, 1997, involved the derailment of four tank cars carrying different flammable liquids. None of the cars overturned and there was no leakage of any material; furthermore, no one was killed, injured, or required medical treatment as a result of the incident. Plaintiff estimated the damage to the tank cars was less than $50,000. Once again, the parties disagree over whether there was a "threat of release" from any of the tank cars. Plaintiff was cited for a violation of Louisiana Revised Statutes 32:1510 for its failure to timely report the incident and a penalty of $5,000 was proposed.

In response to both enforcement actions, plaintiff filed a notice to stop further administrative enforcement and notified the Louisiana State Police of the federal laws it alleged preempted Louisiana Revised Statutes 32:1510. The State Police has refused to voluntarily dismiss the enforcement actions.

The plaintiff now asserts, via its motion for summary judgment, that the FRSA and the HMTA enacted by Congress preempt Louisiana Revised Statutes 32:1510. Thus, plaintiff contends that Louisiana Revised Statutes 32:1510 is unconstitutional pursuant to the Supremacy Clause of the United States Constitution insofar as it applies to railroads.[6] Further, plaintiff asserts that Louisiana Revised Statutes 32:1510 is unconstitutional in violation of the Commerce Clause of the United States Constitution.[7] Finally, plaintiff seeks injunctive relief prohibiting the de-

(4) An estimated property damage of more than ten thousand dollars.

B. A written report shall be submitted to the department on an approved form. Each report submitted shall contain the time and date of the incident or accident, a description of any injuries to persons or property, any continuing danger to life at the place of the accident or incident, the identity and classification of the material, and any other pertinent details.

C. In the case of an incident or accident involving hazardous materials which is not subject to this Chapter but which is subject to Title 49 and Title 46 of the Code of Federal Regulations, the carrier shall send a copy of the report filed with the United States Department of Transportation to the department.

D. The secretary shall adopt and promulgate rules and regulations in accordance with the Administrative Procedures Act to coordi-

nate the implementation of a transportation emergency response system.

**2.** 49 U.S.C. §§ 20101 et seq. (1997 and Supp. 1998).

**3.** 49 U.S.C. §§ 5101 et seq. (1997 and Supp. 1998).

**4.** Because of the Court's finding, it is not necessary to decide whether the Louisiana statute is preempted by the HMTA.

**5.** The Court emphasizes that its opinion only applies to Louisiana Revised Statutes 32:1510's application to railroads.

**6.** U.S. Const. art. VI, cl. 2.

**7.** U.S. Const. art. I, § 8.

fendant's enforcement of Louisiana Revised Statutes 32:1510 against railroads.

Defendant disputes plaintiff's claims and contends that the FRSA and the HMTA do not preempt Louisiana Revised Statutes 32:1510; further, defendant asserts that Louisiana Revised Statutes 32:1510 is not in violation of the Commerce Clause of the United States Constitution since it does not create an unreasonable burden on interstate commerce.

## II. SUMMARY JUDGMENT ANALYSIS

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [8]

The well-established criteria that there must be no *genuine* issue of *material* fact before summary judgment will issue insures that a properly supported motion will not be defeated simply by the "existence of *some* alleged factual dispute." [9] With respect to materiality, because the underlying substantive law is referenced to determine what facts are material,[10] only factual disputes that might affect the action's outcome under governing law can properly preclude summary judgment; disputes over facts which have no effect on the action's resolution are irrelevant.[11] However, even if material, a factual dispute will not prevent summary judgment if the dispute is not "genuine." Such a conclusion is reached when the evidence could

not lead a rational trier of fact to return a verdict for the non-moving party.[12] In examining the record, the Court will view the evidence and draw all reasonable inferences therefrom in favor of the non-moving party.[13]

In this situation, both plaintiff and defendant have filed motions, and the plaintiff bears the burden of persuasion on the issues at trial. Where the moving party bears the burden of persuasion on an issue at trial, the moving party must not only satisfy the initial burden of production on the summary judgment motion by demonstrating that there is no genuine dispute as to any material fact, but also the ultimate burden of persuasion on the claim itself by showing that it would be entitled to a judgment as a matter of law at trial.[14] However, the Court need not determine whether the moving party has carried its ultimate burden of persuasion until after the movant's initial burden of production has been fulfilled. Upon such a showing by the movant, the nonmoving party is required to come forward with evidence which demonstrates the existence of a genuine issue for trial. When all the evidence presented by both parties "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is proper.[15]

In a situation where the moving party does not bear the burden of proof on the issue at trial, the movant may discharge its burden by simply informing the Court of the basis for its motion and either producing evidence that negates the existence of a material element in the non-moving party's claim or de-

---

**8.** Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1560 (5th Cir.1992).

**9.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

**10.** *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

**11.** *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

**12.** *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. *See also Kelley v. Price–Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir.1993) ("If, on the other hand, the factfinder could reasonably find in

[favor of the non-moving party], then summary judgment is improper.").

**13.** *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513; *Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1064 (5th Cir.1993).

**14.** Fed.R.Civ.P. 56(c). *See also Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

**15.** *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1560 (5th Cir.1992).

fense or identifying to the Court those portions of the record which demonstrate the lack of proof supporting a crucial element of the non-movant's case.[16]

Once the moving party makes the proper showing, the burden shifts to the non-moving party to designate "specific facts" in the record, by way of non-conclusory affidavits, depositions, answers to interrogatories, or admissions on file, which evidence that there is a genuine issue for trial.[17] Because it bears the ultimate burden of proof at trial, the non-moving party is required to establish each element crucial to its action "since a complete failure of proof concerning an essential element of the non[-]moving party's case necessarily renders all other facts immaterial."[18] The non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings and "must do more than simply show there is some metaphysical doubt as to the material facts."[19] When all the evidence presented by both parties "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is proper.[20]

## III.  ISSUES AND ANALYSIS

Three issues are presented by the parties' cross motions for summary judgment: (1) whether Louisiana Revised Statutes 32:1510 is preempted by FRSA; (2) whether Louisiana Revised Statutes 32:1510 is preempted by HMTA; and (3) whether Louisiana Revised Statutes 32:1510 is in violation of the Commerce Clause of the United States Constitution.

### FRSA PREEMPTION

█ The question of whether the provisions of FRSA preempt Louisiana Revised Statutes 32:1510 can be answered by looking at the language of FRSA's preemptive provision:

Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable.  A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement.  A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation, or order-

(1) is necessary to eliminate or reduce an essentially local safety hazard;

(2) is not incompatible with a law, regulation, or order of the United States Government; and

(3) does not unreasonably burden interstate commerce.[21]

The Fifth Circuit as well as the Third and Sixth Circuit Courts of Appeals have found this language to evince Congress' intent to supersede the police power of the states and to establish nationally uniform railroad safety regulations.[22]

However, the Fifth Circuit has also held that the preemptive effect of FRSA, while a general rule, is not ironclad; rather, the language of 49 U.S.C. § 20106 (1997 and Supp. 1998) contains two narrow exceptions or situ-

**16.**  *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2553; *Latimer v. Smithkline & French Labs., Div. of Smithkline Beckman Corp.*, 919 F.2d 301, 303 (5th Cir.1990); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).

**17.**  *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Kelley*, 992 F.2d at 1413.

**18.**  *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552.

**19.**  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

**20.**  *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

**21.**  49 U.S.C. § 20106 (1997 and Supp.1998).

**22.**  *Donelon v. New Orleans Terminal Co.*, 474 F.2d 1108, 1112 (5th Cir.), *cert. denied*, 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973); *National Assoc. of Regulatory Util. Comm'rs v. Coleman*, 542 F.2d 11, 13 (3rd Cir.1976); *CSX Transp., Inc. v. Public Util. Comm'n of Ohio*, 901 F.2d 497, 502 (6th Cir.1990), *cert. denied*, 498 U.S. 1066, 111 S.Ct. 781, 112 L.Ed.2d 845 (1991).

ations in which the states may regulate in the field of railroad safety.[23]

The first is where the Secretary of Transportation has not promulgated a federal standard "covering the subject matter" of the state regulation.[24] The second requires the state regulation to satisfy the following three-prong test: the regulation (1) is "necessary to eliminate or reduce an essentially local safety hazard"; (2) is not "incompatible" with a regulation of the United States; and (3) does not "unreasonably burden interstate commerce." [25]

As to the first exception, the Secretary of Transportation has promulgated numerous regulations pertaining to railroad safety.[26] Specifically at issue here are the regulations set forth at 49 C.F.R. § 171.15 (1997) and 49 C.F.R. § 171.16 (1997). These two regulations were promulgated under the HMTA and not the FRSA. However, it is this Court's opinion that this distinction does not negate FRSA preemption. The plain language of FRSA's preemptive provision at 49 U.S.C. § 20106 (1997 and Supp.1998) simply refers to any regulation issued by the Secretary covering the subject matter addressed by the state regulation; it does not limit the preemptive effect of FRSA to only those regulations promulgated under FRSA. The Court's conclusion is supported by the plain language of FRSA's preemptive provision and by the decisions of other courts.[27]

Thus, the narrow question for this Court to decide is whether the federal regulations cited above cover the subject matter addressed by the state regulation. The United States Supreme Court has interpreted "covering the subject matter" to mean that "preemption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law." [28] Furthermore, the United States Supreme Court has stated that courts are not to inquire into the Secretary's purposes in promulgating the regulations; rather, courts are simply to determine whether the federal regulations in fact cover the subject matter addressed by the state regulations.[29]

A comparison of the language of the federal regulations with that of Louisiana Revised Statutes 32:1510 reveals that both address the reporting of accidents occurring during the transportation of hazardous materials which result in either death, personal injury (including the potential therefor (e.g., evacuations)), or property damage. Therefore, the Court finds that the federal regulations at issue here "substantially subsume" the subject matter of the state regulation and that they cover the subject matter addressed by the state regulation. Thus, the first exception to the general rule of FRSA preemption is inapplicable.

Under the second exception, the state regulation must satisfy the three-part test noted above and set forth in 49 U.S.C. § 20106 (1997 and Supp.1998); otherwise, the state regulation is preempted by FRSA.

The first, and most significant, part of the test raises the question of whether Louisiana Revised Statutes 32:1510 is "necessary to eliminate or reduce an *essentially local* safety hazard." [30] The decisions of other courts and the legislative history make it clear that the purpose of this exception is to allow

23. *Missouri Pac. R.R. v. Railroad Comm'n of Texas*, 948 F.2d 179, 182 (5th Cir.1991), *cert denied*, 507 U.S. 1050, 113 S.Ct. 1943, 123 L.Ed.2d 649 (1993); *Donelon*, 474 F.2d at 1112.

24. 49 U.S.C. § 20106 (1997 and Supp.1998); *Missouri Pac.*, 948 F.2d at 182–183; *Donelon*, 474 F.2d at 1112.

25. 49 U.S.C. § 20106 (1997 and Supp.1998); *Missouri Pac.*, 948 F.2d at 182–183; *Donelon*, 474 F.2d at 1112.

26. *See, e.g.,* 49 C.F.R. §§ 200–266 (1997).

27. *CSX Transp.*, 901 F.2d at 501; *Atchison, Topeka and Santa Fe Ry. Co. v. Illinois Commerce Comm'n*, 453 F.Supp. 920, 924–925 (N.D.Ill. 1977); *Missouri Pac. R.R. Co. v. Railroad Comm'n of Texas*, 671 F.Supp. 466, 471, n. 1 (W.D.Tex.1987), *affirmed*, 850 F.2d 264 (5th Cir. 1988), *cert. denied*, 488 U.S. 1009, 109 S.Ct. 794, 102 L.Ed.2d 785 (1989).

28. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 1738, 123 L.Ed.2d 387 (1993).

29. *Easterwood*, 507 U.S. at 675, 113 S.Ct. at 1743.

30. 49 U.S.C. § 20106(1) (1997 and Supp.1998) (emphasis added).

states to respond to unique local conditions or specific hazards which are not statewide in character and which cannot be adequately encompassed within uniform national regulations.[31] The state statute at issue here, by its terms, does not target any "essentially local" safety hazards; rather, it simply addresses reporting requirements whenever there is an accident during the transportation of hazardous materials which results in death, personal injury, property damage, or danger to life, *regardless of where in the state the accident should happen to occur*. Such accidents can and do happen at various locations in the state and are, accordingly, not unique to any particular locality. Thus, the Court concludes that the state statute does not target an "essentially local safety hazard." [32]

Furthermore, the Court finds that the state statute is not compatible with the federal regulations, as required by the second part of the three-part test.[33] A comparison of the language of the state statute with that of the federal regulations reveals several instances of incompatibility. For example, the state statute requires each "person" to report an incident to the appropriate authority, whereas the federal regulations require each "carrier" to report.[34] Also, the statute requires that the notice be given to the Louisiana Department of Public Safety and Corrections whereas the federal regulation requires that the notice be given to the United States Department of Transportation.[35] Furthermore, the state statute requires that the notice be given "immediately" whereas the

federal regulation requires that the notice be given "at the earliest practicable moment." [36] Finally, the state statute requires that notice be given whenever the estimated property damage exceeds $10,000 whereas the federal regulation requires notification only when estimated property damage exceeds $50,000.[37] Therefore, state law imposes obligations substantially different from those imposed under federal law.

■ Finally, the Court concludes that because Louisiana Revised Statutes 32:1510 unreasonably burdens interstate commerce, it does not satisfy the third prong of the three-part test.[38] A state statute unreasonably burdens interstate commerce if the burden placed on interstate commerce is clearly excessive in relation to the local benefit.[39]

The asserted local benefit provided by the state statute allows local authorities to provide an immediate response to an emergency situation involving hazardous materials. The federal regulatory framework provides for notification to the appropriate state authorities in the event of an accident or incident.[40]

Furthermore, the plaintiff in the instant matter is an interstate rail carrier. Such interstate carriers, when involved in accidents, could be subjected to starkly different requirements depending on which state an accident happens to occur in. For example, State A may require notice to be given immediately by the carrier to the local fire department, whereas State B may require notice to be given as soon as practicable by each involved person to the state police; further-

**31.** *Easterwood*, 507 U.S. at 675, 113 S.Ct. at 1743; *National Assoc. of Regulatory Util. Comm'rs v. Coleman*, 542 F.2d 11, 14–15 (3rd Cir.1976); *Herriman v. Conrail, Inc.*, 883 F.Supp. 303, 307 (N.D.Ind.1995); *Earwood v. Norfolk Southern Ry. Co.*, 845 F.Supp. 880, 887–888 (N.D.Ga.1993); 1970 U.S.Code Cong. & Admin. News, 91st Cong., 2d Sess., 4104, 4117.

**32.** The Court does not question the good faith effort on the part of the State of Louisiana to protect its citizens from accidents involving trains. However, the issue is not good faith but preemption.

**33.** 49 U.S.C. § 20106(2) (1997 and Supp.1998).

**34.** La.Rev.Stat. Ann. § 32:1510 (1989); 49 C.F.R. § 171.15 (1997).

**35.** La.Rev.Stat. Ann. § 32:1510 (1989); 49 C.F.R. § 171.15 (1997).

**36.** La.Rev.Stat. Ann. § 32:1510 (1989); 49 C.F.R. § 171.15 (1997).

**37.** La.Rev.Stat. Ann. § 32:1510 (1989); 49 C.F.R. § 171.15 (1997).

**38.** 49 U.S.C. § 20106(3) (1997 and Supp.1998).

**39.** *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

**40.** *See e.g.*, 49 C.F.R. §§ 300.110, 300.115, 300.180 (1997).

more, in cases of property damage, State A may require notification only when the damage exceeds $75,000 whereas State B may require notification whenever the damage exceeds $5,000.

Hence, there is the potential for an interstate carrier to be subject to fifty different sets of regulations by each of the fifty states. These varying obligations, all dependent on which state the accident happens to occur in, place an unreasonable burden on interstate carriers and, accordingly, on interstate commerce. Congress, in fact, recognized this potential risk when it reported: "To subject a carrier to enforcement before a number of different state administrative and judicial systems in several areas of operation could well result in an undue burden on interstate commerce." [41] The State of Louisiana's asserted interest in public safety and in protecting its citizens from the dangers of hazardous materials, while certainly legitimate, is addressed by the federal regulations which provide for notification to the appropriate state authorities as well as by the likelihood that local authorities will be voluntarily notified by rail carriers in the event of accidents involving hazardous materials.

Therefore, because the three-part test set forth in 49 U.S.C. § 20106 (1997 and Supp. 1998) is not satisfied, the second exception to the applicability of FRSA preemption is not applicable. Accordingly, because neither exception to the general rule of FRSA preemption is applicable, the Court holds that Louisiana Revised Statutes 32:1510 is preempted by FRSA and is thus unconstitutional in violation of the Supremacy Clause of the United States Constitution insofar as it applies to railroads operating in interstate commerce.[42]

### COMMERCE CLAUSE

■ For the same reasons set forth above, the Court also finds that Louisiana Revised Statutes 32:1510 unreasonably burdens interstate commerce and thus is in violation of the Commerce Clause of the United States Constitution.[43]

In accordance with the Court's ruling, plaintiff shall be entitled to injunctive relief enjoining and prohibiting the defendant from enforcing the provisions of Louisiana Revised Statutes 32:1510 against it. The defendant shall also be enjoined from enforcing the two penalties of $2,500 and $5,000 resulting from the August 30, 1995 and the February 18, 1997 incidents.

Therefore:

IT IS ORDERED that plaintiff's motion for summary judgment is GRANTED to the extent that the Court finds Louisiana Revised Statutes 32:1510 is preempted by the FRSA insofar as it applies to railroads operating in interstate commerce.

IT IS FURTHER ORDERED that plaintiff's request for injunctive relief, prohibiting the defendant's enforcement of Louisiana Revised Statutes 32:1510, be and it is GRANTED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment be and it is DENIED.

The parties shall submit a proposed judgment approved as to form by all parties in accordance with the Court's opinion within 15 days.

It is so ordered.

---

41. 1970 Code Cong. & Admin. News, 91st Cong., 2d Sess., p. 4111.

42. U.S. Const. art. VI, cl. 2. Because of the Court's finding, it is not necessary to decide whether the Louisiana statute is preempted by the HMTA.

43. U.S. Const. art. I, § 8, cl. 3.